IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

FILED IN CLERK'S OFFICE
U.S.D.C. - ATLANTA

JUN 1 7 2005

LUTHER D. THOMAS, CLERK
By:_____
Deputy Clerk

| | | |
|---|---|---|
| Ellen Schaaf, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION FILE NO. |
| | ) | 1:04-CV-2346-GET |
| SmithKline Beecham Corporation | ) | |
| d/b/a GlaxoSmithKline; SmithKline | ) | |
| Beecham Corporation;  and | ) | |
| GlaxoSmithKline, | ) | |
| | ) | |
| Defendants. | | |

### AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL

COMES NOW Plaintiff Ellen Schaaf, by and through counsel, and files this Amended Complaint and Demand for Jury Trial against Defendants SmithKline Beecham Corporation d/b/a GlaxoSmithKline, SmithKline Beecham Corporation, and  GlaxoSmithKline (collectively "GlaxoSmithKline") and alleges as follows:

### JURISDICTION AND VENUE

1.

This is an action for declaratory and injunctive relief, monetary damages and attorneys' fees and litigation expenses pursuant to Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.*; the

Pregnancy Discrimination Act of 1978, as amended, 42 U.S.C. § 2000e(k);

42 U.S.C. § 1981a; the Family and Medical Leave Act of 1993, as amended,

29 U.S.C. § 2601 *et seq.*, and its implementing regulations, 29 C.F.R. § 875

*et seq.*; 42 U.S.C. § 1988; the Equal Pay Act, 29 U.S.C. § 206(d); and under

state tort law.  The jurisdiction of this Court is invoked pursuant to 28

U.S.C. §§ 1331, 1343, 1367, 2201 and 2202; 29 U.S.C. §§ 216 and 2617;

and 42 U.S.C. § 2000e-5(f).

2.

Venue is proper in this Court pursuant to 28 U.S.C. § 1391 and 42

U.S.C. § 2000e-5(f) inasmuch as a substantial part of the events giving rise

to the claim occurred in the Northern District of Georgia.  Plaintiff Ellen

Schaaf was assigned to and reported to Defendant's Atlanta, Georgia office,

and some of the unlawful employment practices were committed in the

Northern District of Georgia.

## THE PARTIES

3.

Plaintiff Ellen Schaaf (hereinafter "Plaintiff" or "Ms. Schaaf") is a

female resident of the State of South Carolina, currently living at 3318

Cotton Field Drive, Mount Pleasant, South Carolina 29466.  Ms. Schaaf is

an employee of Defendant SmithKline Beecham Corporation, Defendant

GlaxoSmithKline and/or Defendant SmithKline Beecham Corporation d/b/a

GlaxoSmithKline (hereinafter collectively referred to as "Defendant,"

"GlaxoSmithKline" or "Company").

4.

According to the Secretary of State of the State of Georgia, Defendant

SmithKline Beecham Corporation is incorporated under the laws of the

Commonwealth of Pennsylvania, and its principal offices are located at One

Franklin Plaza, Philadelphia, Pennsylvania 19102.  It is registered to do

business and is doing business in the State of Georgia, and its registered

agent therein is Corporation Service Co., 40 Technology Pkwy. South, #300,

Norcross, Georgia 30092, where it may be served with the Summons and

Complaint.  According to the GlaxoSmithKline website, it is a

pharmaceutical company headquartered in the United Kingdom with

operations based in the United States, formed by the merger of "Glaxo

Wellcome plc" and "SmithKline Beecham plc" "by way of a scheme of

arrangement."

5.

GlaxoSmithKline has employed thousands of employees for each

working day during each of twenty or more calendar weeks in the current

and preceding calendar years and is subject to suit under Title VII, the

3

Pregnancy Discrimination Act, the Equal Pay Act and the Family and Medical Leave Act.

6.

Since 1989, GlaxoSmithKline and/or its predecessor has been Ms. Schaaf's employer as that term is defined by Title VII, the Pregnancy Discrimination Act, the Equal Pay Act and the Family and Medical Leave Act.

7.

In January 2003, Ms. Schaaf had worked for GlaxoSmithKline for over one year, had worked more than 1,250 hours during the preceding twelve months and was an eligible employee as that term is defined by the Family and Medical Leave Act.

8.

Ms. Schaaf is and has been an employee of GlaxoSmithKline, assigned to and reporting to its Atlanta, Georgia office, located at 3 Ravinia Drive, Suite 1900, Atlanta, Georgia 30346, for much of the relevant time period.

4

## ADMINISTRATIVE PROCEEDINGS

### 9.

On or about September 22, 2003, within 180 days of the challenged unlawful conduct, Ms. Schaaf filed a Charge of Discrimination with the United States Equal Employment Opportunity Commission (hereinafter "EEOC"), denominated as Charge No. 110-2004-00063, setting forth her claims for gender and pregnancy discrimination and retaliation. Ms. Schaaf also filed an Amended Charge of Discrimination with the EEOC on or about January 12, 2004.

### 10.

Ms. Schaaf's Charge was processed by the EEOC, and GlaxoSmithKline received a copy of the Charge, as amended.

### 11.

The EEOC issued a Notice of Right to Sue on Charge No. 110-2004-00063 on or about May 14, 2004, to Ms. Schaaf via the United States Mail. Ms. Schaaf has initiated this action within ninety days of her receipt of the EEOC Notice of Right to Sue.

### 12.

All of the administrative prerequisites to filing and maintaining this action have been fully satisfied by Ms. Schaaf.

5

## STATEMENT OF THE CASE

13.

In November 1989, Defendant first hired Ms. Schaaf to work as a Professional Sales Representative, based out of its Atlanta, Georgia office. She performed very well in this job. Four years later, she was promoted to the position of District Sales Manager (hereinafter "DSM") assigned to Atlanta. She performed very well in this job.

14.

In September 1999, Ms. Schaaf was promoted to the position of Regional Vice President (hereinafter "RVP") over Defendant's Florida/Southern Georgia region, the business unit for which was located in Atlanta, Georgia. Ms. Schaaf was assigned to the unit in Atlanta.

15.

As RVP, Ms. Schaaf's duties included increasing sales of the Company's product line in her region and overseeing and setting standards for her management team and sales representatives. She oversaw approximately 140 employees.

16.

Upon assuming this RVP position, Ms. Schaaf, who already had two children at the time, worked out an arrangement under which, when not

6

traveling around her region and to Atlanta, she worked at home in South Carolina while managing her region. She had an office and an administrative assistant in Atlanta. This arrangement saved net travel costs for GlaxoSmithKline.

17.

By the objective measures used by GlaxoSmithKline to evaluate RVPs, Ms. Schaaf was exceptionally successful as the RVP for the Florida/Southern Georgia region.

18.

Before Ms. Schaaf took over the region, it had been seriously underperforming and was ranked sixteenth out of eighteen regions (16th out of 18). Under Ms. Schaaf's energetic and skilled leadership, however, the region vastly improved. In three short years under Ms. Schaaf, the region progressed to be ranked third out of fourteen regions (3rd out of 14). (A reorganization eliminated four regions, resulting in the new total of fourteen.)

19.

During this time, Ms. Schaaf earned several prestigious GlaxoSmithKline awards, including the 2002 Ruby Level Winners Circle Award, a top sales award in the Company.

20.

During the same time period, Ms. Schaaf earned an Annual

Performance Rating of "Exceeds Expectations" from her supervisor, Chris

Singer.

21.

Ms. Schaaf achieved all of this success as RVP of the

Florida/Southern Georgia Region while raising three children and being part

of a two-career family.  Ms. Schaaf served as a role model to other working

mothers within the Company and represented the Company for an interview

with Working Mother magazine as a model "working mother" who could

"do it all."

22.

The culture at GlaxoSmithKline, however, was and is negative

towards professional women, especially those who are pregnant or have

children.

23.

As an RVP, Ms. Schaaf did not receive the same level of

administrative or economic support or pay as was furnished to male RVP's.

24.

In the fall of 2001 and in the spring of 2002, Ms. Schaaf complained to her supervisor and the Company's human resources department about a hostile work environment being created by a male peer, but the Company did nothing to alleviate the problem.

25.

Workplace events at GlaxoSmithKline were often exceptionally male-oriented, including behavior that was demeaning to women. For instance, at one GlaxoSmithKline sales meeting, a male NASCAR race car driver invited by the Company as a guest speaker made a series of crude and sexually offensive remarks to his audience, including stories about autographing dildos for women. The company took no action.

26.

Males are frequently allowed by GlaxoSmithKline to evade and ignore reimbursable expense guidelines, whereas females like Ms. Schaaf are not.

27.

A number of Ms. Schaaf's subordinates resented an assertive female supervisor insisting that they improve their performance, and they began to make false complaints about her to the Company.

28.

At least one DSM who reported to Ms. Schaaf openly voiced his

displeasure at working for a female.  GlaxoSmithKline did nothing to

prevent or correct such open sexism by a member of its management.

29.

Others criticized Ms. Schaaf behind her back for providing equal and

fair opportunities for women and minorities in her region.

30.

The Company acquiesced in and/or encouraged Ms. Schaaf's

subordinates' biased and retaliatory complaints and began an unwarranted

investigation into her management style.  Ms. Schaaf was not allowed to

know the accusations against her and thus was not given a fair opportunity to

answer them.  No known male peer was similarly treated by

GlaxoSmithKline.

31.

The investigation that the Company conducted into these complaints

about Ms. Schaaf was far more extensive than the investigation it had

conducted in response to Ms. Schaaf's complaints about the hostile work

environment created by a male RVP.  Ms. Schaaf's gender and

GlaxoSmithKline's retaliatory motives were the reason.

32.

As a result of Ms. Schaaf's subordinates' biased and retaliatory complaints and the Company's acquiescence to and/or encouragement of them, Ms. Schaaf was then given a verbal warning and placed on a performance improvement plan, or "PIP," in the fall of 2002. Prior to that time, Ms. Schaaf had never been disciplined for any reason nor received any negative performance evaluations during her career.

33.

Meanwhile, in the summer of 2002, Lisa Gonzalez had become Ms. Schaaf's immediate supervisor.

34.

Soon after Ms. Gonzalez became her supervisor, Ms. Schaaf notified the Company, including Ms. Gonzalez, that she was pregnant with her fourth child and requested maternity leave. She asked for time off under both the Company's short-term disability plan and under the Family and Medical Leave Act. Her requests were ultimately granted.

35.

From the beginning, however, Ms. Gonzalez was hostile toward Ms. Schaaf's request to take maternity leave.

36.

For example, Ms. Gonzalez at one point simultaneously told Ms. Schaaf both that her request for maternity leave was not approved and that she was not to do any work whatsoever while on maternity leave.

37.

Ms. Schaaf's fourth child was born in January 2003, and she began her maternity leave that month.

38.

During Ms. Schaaf's maternity leave, Ms. Gonzalez continued to harass her by, among other things, unfairly criticizing her for not submitting expense reports or self-assessment reports while she was out on maternity leave and improperly having her locked out of the relevant computer system to submit these reports.

39.

Ms. Schaaf was scheduled to return to work on or about April 15, 2003.

40.

When it was time for her to return, however, Ms. Schaaf was told by Ms. Gonzalez and Director of Human Resources Cynthia Kelly that GlaxoSmithKline would not return her to her RVP position.  No valid reason

was given to Ms. Schaaf for this major adverse action against a high-performing RVP.

41.

Ms. Schaaf was replaced in her RVP position by a male, Jack Planchard, with a lesser record of prior performance.

42.

When he became an RVP, Mr. Planchard was given greater support and resources than Ms. Schaaf was given when she held that position.

43.

Instead of allowing Ms. Schaaf to return to the position she held prior to going out on maternity leave, the Company gave her a "choice" between being terminated or being demoted to a DSM position. This "choice" was intended to force Ms. Schaaf to leave the Company rather than accept the humiliation of a demotion. In the interim, the Company put her on involuntary "administrative leave" for six weeks.

44.

Given these two exceptionally unattractive alternatives, Ms. Schaaf took, under protest, the DSM demotion and complained that her treatment by the Company was discriminatory and retaliatory.

45.

Even though the Company forced Ms. Schaaf to choose between demotion and termination, Ms. Gonzalez and Ms. Kelly falsely told a group of employees that Ms. Schaaf had chosen to move to the DSM position because Ms. Schaaf decided she was unable to handle both her RVP position and motherhood. Ms. Kelly also asked Ms. Schaaf to tell others the same thing. These statements were patently false.

46.

As a DSM, Ms. Schaaf's job duties involve managing a smaller geographic area and smaller group of subordinates than she had previously managed as an RVP. She now oversees fourteen sales representatives.

47.

When she was unlawfully demoted, Ms. Schaaf was placed at grade level S04, despite meeting the criteria for grade level S03. Grade level S03 has a higher salary range, a higher target market rate for salary, and a higher compensation target than does S04. This adverse action was further retaliation and gender discrimination against Ms. Schaaf.

48.

In violation of GlaxoSmithKline policy, Ms. Schaaf has not been informed of the "Winning Practices Assessment" that should have been completed regarding her grade level placement.

49.

Upon her return from maternity leave in 2003, Ms. Schaaf never received a 2002 performance review, salary review or notice of awarded stock options.

50.

Despite her excellent job performance, Ms. Schaaf also never received a raise for 2002.

51.

Since her return, Ms. Schaaf has also never been fully reimbursed for all of her business expenses previously incurred.  The reimbursements that have been made have been late and caused Ms. Schaaf to lose the time value of the money.  There is no valid basis for the non-payment and late payment of the business expenses Ms. Schaaf incurred in GlaxoSmithKline's behalf. Retaliation and bias are the transparent reasons.

52.

Further efforts to alienate and retaliate against Ms. Schaaf since her return from maternity leave have included not providing her with the data necessary to do her job efficiently, such as her team's sales numbers; removing her from the Company's Diversity Council without any prior notification; excluding her from Diversity Council recognition events; not recognizing her successful team at the National Managers Meeting; excluding her from a prestigious Winners Circle Award luncheon with General Manager Chris Viehbacher, to which she rightfully deserved an invitation given her sales award and strong sales performance; as well as deleting and locking her out of her voice mail box.

53.

Representative of the Company's negative attitude towards professional women with children are comments or inquiries made by management regarding how many children females in the Company have or may have in the future and concerns expressed by management regarding the work longevity of women with children.

54.

Despite all of the obstacles placed in her path by GlaxoSmithKline, Ms. Schaaf has continued to perform well for the Company.  Indicative of

this is her earning another top sales award for 2003, the Emerald Winners

Circle Award, as well as numerous Spirit Awards.

## COUNT ONE
## GENDER AND PREGNANCY DISCRIMINATION AND RETALIATION UNDER TITLE VII AND THE PREGNANCY DISCRIMINATION ACT

55.

Plaintiff incorporates the allegations contained in Paragraphs 1

through 54 as if fully set forth herein.

56.

Defendant GlaxoSmithKline unlawfully discriminated against Ms.

Schaaf by refusing to allow her to return to her RVP position and by

demoting her to a lesser DSM position after she returned from maternity

leave because of her gender and on the basis of her pregnancy and

pregnancy-related condition in violation of Title VII and the Pregnancy

Discrimination Act.

57.

Defendant GlaxoSmithKline unlawfully discriminated against Ms.

Schaaf by refusing to allow her to return to her RVP position and by

demoting her to a lesser DSM position after she returned from maternity

leave because of her association with and lawful treatment of female and

17

minority subordinates, which action by Defendant was based on retaliation and gender in violation of Title VII.

58.

Defendant GlaxoSmithKline unlawfully discriminated and retaliated against Ms. Schaaf by subjecting her to less favorable working conditions than those afforded similarly situated male employees in violation of Title VII.

59.

At all times relevant to this action, Defendant GlaxoSmithKline acted intentionally, willfully and in bad faith toward Ms. Schaaf and with malice and reckless indifference to Ms. Schaaf's federally protected rights. Defendant GlaxoSmithKline's intentional acts toward Ms. Schaaf caused her to suffer a demotion in her job, financial loss, emotional pain and suffering, inconvenience, mental anguish and other losses.

## COUNT TWO
## RETALIATION UNDER TITLE VII

60.

Plaintiff incorporates the allegations contained in Paragraphs 1 through 59 as if fully set forth herein.

61.

Defendant GlaxoSmithKline has unlawfully harassed and created a
hostile working environment for Ms. Schaaf in retaliation for her
participation in protected activity, specifically her complaints – both internal
and external – about being discriminatorily demoted to a DSM position and
not being allowed to return to her RVP position after returning from
maternity leave.    Such action violates the anti-retaliation provisions of Title
VII.

62.

At all times relevant to this action, Defendant GlaxoSmithKline acted
intentionally, willfully and in bad faith toward Ms. Schaaf and with malice
and reckless indifference to Ms. Schaaf's federally protected rights.
Defendant GlaxoSmithKline's intentional acts toward Ms. Schaaf have
caused her to suffer financial loss, emotional pain and suffering,
inconvenience, mental anguish and other losses.

## COUNT THREE
## INTERFERENCE WITH RIGHTS UNDER THE FAMILY AND MEDICAL LEAVE ACT

### 63.

Plaintiff incorporates the allegations contained in Paragraphs 1 through 62 as if fully set forth herein.

### 64.

Defendant GlaxoSmithKline unlawfully refused to allow Ms. Schaaf to return to her RVP position and demoted her to a lesser DSM position after she returned from maternity leave in interference with her rights under the FMLA.

### 65.

At all times relevant to this action, Defendant GlaxoSmithKline acted intentionally, willfully and in bad faith toward Ms. Schaaf and with malice and reckless indifference to Ms. Schaaf's federally protected rights. Defendant GlaxoSmithKline's intentional acts toward Ms. Schaaf caused her to suffer a demotion in her job, financial loss, emotional pain and suffering, inconvenience, mental anguish and other losses.

## COUNT FOUR
## RETALIATION UNDER THE FAMILY AND MEDICAL LEAVE ACT

### 66.

Plaintiff incorporates the allegations contained in Paragraphs 1 through 65 as if fully set forth herein.

### 67.

Defendant GlaxoSmithKline unlawfully refused to allow Ms. Schaaf to return to her RVP position and demoted her to a lesser DSM position after she returned from maternity leave in retaliation for her exercising her rights under the FMLA.

### 68.

At all times relevant to this action, Defendant GlaxoSmithKline acted intentionally, willfully and in bad faith toward Ms. Schaaf and with malice and reckless indifference to Ms. Schaaf's federally protected rights. Defendant GlaxoSmithKline's intentional acts toward Ms. Schaaf caused her to suffer a demotion in her job, financial loss, emotional pain and suffering, inconvenience, mental anguish and other losses.

## COUNT FIVE
## GENDER DISCRIMINATION UNDER THE EQUAL PAY ACT

69.

Plaintiff incorporates the allegations contained in Paragraphs 1 through 65 as if fully set forth herein.

70.

Defendant GlaxoSmithKline has unlawfully discriminated against Ms. Schaaf by, on the basis of sex, paying her wages at a rate less than the rate at which it pays and has paid wages to similarly-situated male employees, including but not limited to RVP Mitch Johnson, in its establishment for equal work on jobs the performance of which require equal skill, effort and responsibility and which are performed under similar working conditions.

71.

At all times relevant to this action, Defendant GlaxoSmithKline acted intentionally, willfully and in bad faith toward Ms. Schaaf and with malice and reckless indifference to Ms. Schaaf's federally protected rights. Defendant GlaxoSmithKline's intentional acts toward Ms. Schaaf caused her financial loss, emotional pain and suffering, mental anguish and other losses.

22

## COUNT SIX
## <u>NEGLIGENT RETENTION</u>

### 72.

Plaintiff incorporates the allegations contained in Paragraphs 1 through 71 as if fully set forth herein.

### 73.

Defendant GlaxoSmithKline was negligent in retaining as an employee Lisa Gonzalez.  Defendant knew or should have known of her propensity to discriminate based on sex against professional women who are pregnant and/or have children and to retaliate against those subordinates who assert their lawful rights.

### 74.

Defendant GlaxoSmithKline's negligence in this regard has caused Ms. Schaaf to suffer a demotion in her job, financial loss, emotional pain and suffering, inconvenience, mental anguish and other losses.

23

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that the Court:

a) Enter judgment in favor of Plaintiff;

b) Issue a declaratory judgment that:

    i)      Defendant GlaxoSmithKline discriminated against Plaintiff because of her gender, on the basis of her pregnancy and pregnancy-related condition and because of her association with and lawful treatment of female subordinates, in violation of Title VII and the Pregnancy Discrimination Act;

    ii)     Defendant GlaxoSmithKline has unlawfully harassed and created a hostile working environment for Plaintiff in retaliation for her participation in protected activity, in violation of Title VII;

    iii)    Defendant GlaxoSmithKline unlawfully interfered with Plaintiff's rights under the FMLA;

    iv)    Defendant GlaxoSmithKline unlawfully retaliated against Plaintiff for exercising her rights, in violation of the FMLA;

24

     v)     Defendant GlaxoSmithKline unlawfully discriminated against Plaintiff based on gender by paying her less than similarly- situated males, in violation of the Equal Pay Act; and

     vi)     Defendant GlaxoSmithKline negligently retained Lisa Gonzalez;

c) Permanently enjoin Defendant GlaxoSmithKline, its officers, agents, successors, employees and attorneys from:

     i)     Engaging in any employment practice, policy or custom that discriminates against any employee on the basis of gender or pregnancy or in retaliation for engaging in protected activity; and

     ii)     Interfering with employees' rights under the FMLA or retaliating against employees for their use of FMLA leave;

d) Enter an injunction requiring Defendant GlaxoSmithKline to:

     i)     Revise its FMLA and maternity leave policies to fully conform with the FMLA and the Pregnancy Discrimination Act and implementing regulations;

25

    ii)    Train all employees on the proper methods and policy under the FMLA and Pregnancy Discrimination Act for handling requests for leave and for facilitating employees' returns to work thereafter; and

    iii)    Permanently remove all negative information from Plaintiff's files;

e)  Order Defendant GlaxoSmithKline to:

    i)    Reinstate Plaintiff to the position of Regional Vice President, retroactively with all the rights, benefits and privileges thereto; and

    ii)    Permanently remove Lisa Gonzalez from Plaintiff's reporting relationship and significantly discipline Ms. Gonzalez and others responsible for the unlawful discrimination and retaliation which Ms. Schaaf has suffered;

f)  Award Plaintiff backpay, lost wages, overtime and lost benefits, together with prejudgment interest;

g)  Award Plaintiff compensatory and punitive damages in an amount to be determined at trial;

26

h) Award Plaintiff actual and/or nominal damages in an amount to be determined at trial;

i) Award Plaintiff liquidated damages under the Equal Pay Act based upon Defendant's willful violations;

j) Award Plaintiff reasonable attorneys' fees, costs and litigation expenses;

k) Tax all costs against Defendants, and

l) Grant such other and further relief as the Court deems just and proper.

## DEMAND FOR A JURY TRIAL

Plaintiff demands a jury trial for all issues so triable.

Respectfully submitted,

**ASHE, RAFUSE & HILL, LLP**
1355 Peachtree Street, N.E.
Suite 500
Atlanta, GA 30309-3232
Telephone: (404) 253-6000
Facsimile: (404) 253-6060

s/ Christopher A. McGraw
R. Lawrence Ashe, Jr.
Georgia Bar No.:  024500
Nancy E. Rafuse
Georgia Bar No.:  621717
David E. Gevertz
Georgia Bar No.:  292430
Christopher A. McGraw
Georgia Bar No.:  493177

Counsel for Plaintiff Ellen Schaaf

3002-0001.68